IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| JOHN R. W., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 18-3307 |
| v. | * | |
| | * | |
| | * | |
| ANDREW M. SAUL, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant.[1] | * | |
| | *********** | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff John R. W. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 18).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 18) is

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

On June 15, 2017, Administrative Law Judge ("ALJ") Brian Kilbane held a hearing where Plaintiff and a vocational expert ("VE") testified. R. at 47-76. Plaintiff at the hearing amended his alleged onset date of disability to March 15, 2014. R. at 50. The ALJ thereafter found on July 6, 2017, that Plaintiff was not disabled from his amended alleged onset date of disability through the date of the ALJ's decision. R. at 23-41. Because Plaintiff's amended alleged onset date of disability fell after his date last insured of September 30, 2008, the ALJ dismissed Plaintiff's DIB application. R. at 28. In his decision the ALJ found that Plaintiff had mild limitations in, among other things, the ability to concentrate, persist, or maintain pace. R. at 30. The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: Despite his mental limitations, [Plaintiff] retains the ability to perform simple, unskilled work on a sustained basis in a competitive work environment where there is no more than occasional interaction with the general public. He can maintain his concentration, persistence, and pace for 2 hours before taking a break from work and he can do that repeatedly to complete an 8-hour workday.

R. at 30. In light of this RFC and the VE's testimony, the ALJ found that, although he could not perform his past relevant work as a security guard, fast-food cook, sales clerk, and stock clerk, Plaintiff could perform other work in the national economy, such as a warehouse worker, cleaner, or garment sorter. R at 34-35. The ALJ thus found that Plaintiff was not disabled from March 15, 2014, through July 6, 2017. R. at 36.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on October 26, 2018, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production

and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# III

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

**IV**

**<u>Discussion</u>**

Plaintiff argues that the ALJ erroneously evaluated his subjective complaints. Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 12-1. Plaintiff further contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[4] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). *Id.* at 8-14. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 10. In particular, he contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* Plaintiff then asserts that the ALJ failed to explain how the RFC assessment to simple, unskilled work reflected his mild limitation in concentrating, persisting, or maintaining pace. *Id.* at 12. Plaintiff finally contends that the ALJ failed to explain how, despite his symptoms, he could concentrate, persist, and maintain pace without loss of productivity throughout an eight-hour workday. *Id.* at 14. For the following reasons, Plaintiff's contentions are unavailing.

**A.     ALJ's Credibility Determination**

The Court turns first to Plaintiff's argument that substantial evidence does not support the ALJ's assessment of his credibility. The ALJ reviewed Plaintiff's testimony in his decision:

> At the hearing, [Plaintiff] testified to having problems with focus and understanding daily. He described having breakdowns with chills and cold

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> sweats, and having suffered trauma as a child (hit by a car and physical and emotional abuse). He stated that he is currently homeless and receives mental treatment. He testified to having visual and auditory hallucinations and said he could not hold a job due to problems with supervisors and other people. He endorsed feelings of homicidality and said he felt loss and had manic states. He denied having problems with anxiety or restlessness and said he had no problem leaving his house. However, he said that he had panic attacks daily, problems being in crowds, and issues interacting with others.

R. at 31; *see* R. at 53-69. According to Plaintiff, the ALJ failed to explain which of his statements to believe and which to discredit. Pl.'s Mem. Supp. Mot. Summ. J. 3-4, ECF No. 12-1 (citing *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015)). Plaintiff contends that the ALJ considered the type of activities that he could perform without also considering the extent to which he could perform them. *Id.* at 7-8 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). For the reasons discussed below, Plaintiff's arguments are unavailing.

> Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis v. Berryhill*, 858 F.3d 858, 865-66 (4th Cir. 2017) (citations omitted); *see* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 31. The ALJ noted that

> treatment notes indicate that [Plaintiff] was capable of managing personal care needs independently, living with others, preparing meals, managing personal care needs and taking medication without reminders, taking public transportation, shopping in stores, going out alone, and managing money independently. This evidence suggests that symptoms of his impairments were not as frequent, intense, or limiting as alleged in connection to this application and appeal. Rather, the longitudinal record supports a finding that [Plaintiff] could perform a range of simple routine tasks with social limitations as set forth in the above [RFC].

R. at 32 (citation omitted). Thus, "the ALJ cited [Plaintiff's] daily activities for purposes of the credibility determination and not as examples of the functions [he] could perform for an entire day." *Ladda v. Berryhill*, 749 F. App'x 166, 173 n.4 (4th Cir. 2018). "The ALJ did not equate [Plaintiff's] ability to perform certain activities of daily living with an ability to work full time. Instead, [the ALJ] used [his] reported activities to assess the credibility of [his] statements concerning the intensity, persistence, or limiting effects of [his] symptoms consistent with the applicable rules . . . ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Further, the ALJ found that, "[a]lthough [Plaintiff] has alleged total debility due to symptoms of his mental impairment, careful review of the evidence of record simply does not bear this out." R. at 31. "Rather, records show mostly routine and conservative treatment of [Plaintiff's] mental impairments with an emphasis on medication. Records also document significant periods of noncompliance with medication." R. at 31 (citations omitted). The ALJ also noted that Plaintiff's testimony about having problems with getting along with others, including authority figures, was inconsistent with treatment notes in the record (R. at 32). *See Dunn v. Colvin*, 607 F. App'x 264, 271-72 (4th Cir. 2015) (holding that, in determining claimant's credibility, ALJ did not err in his consideration of conservative nature of claimant's treatment and her noncompliance with taking her medications as prescribed).

Plaintiff further maintains that substantial evidence does not support the ALJ's finding of his "ability to perform a broad range of normal daily activities." Pl.'s Mem. Supp. Mot. Summ. J. 4-8, ECF No. 12-1. Plaintiff reported in his function report, however, that he had no problem with personal care (R. at 325), he shopped in stores and could pay his bills and use a checkbook (R. at 327), he could go out alone (R. at 327, 328), and that he socially interacted in person and on the phone (R. at 328). *See Johnson*, 434 F.3d at 658 ("The ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam). As noted above, when the Court reviews an ALJ's credibility determination, the Court does not substitute its judgment for that of the ALJ. *Ladda*, 749 F. App'x at 171 n.3 (citing *Hancock*, 667 F.3d at 472). Because "the ALJ cited adequate evidence from the record to support his conclusion that [Plaintiff's] statements were not entirely credible," Plaintiff's contention that substantial evidence does not support the ALJ's determination of his credibility is without merit. *Id.*

**B.    ALJ's RFC Assessment**

The Court next addresses Plaintiff's contention that the ALJ erred in assessing his RFC. Pl.'s Mem. Supp. Mot. Summ. J. 8-14, ECF No. 12-1. SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio*, 780 F.3d at 636 (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

The Fourth Circuit further held in *Mascio* that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for

the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* In other words, under *Mascio*, "once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *McLaughlin v. Colvin*, 200 F. Supp. 3d 591, 600 (D. Md. 2016) (quoting *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015)).

Plaintiff first contends that, by failing to set forth a narrative discussion while assessing his RFC, the ALJ did not comply with SSR 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 8-11, ECF No. 12-1. In assessing his RFC, however, the ALJ considered the treatment records, opinion evidence, hearing testimony, and his credibility (R. at 30-34). *See Chandler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-2712, 2014 WL 457746, at *2 (D. Md. Jan. 31, 2014) ("[T]he ALJ provided approximately a four-page written narrative on her RFC alone, in which he summarized [the claimant's] hearing testimony, made a credibility determination, reviewed both the treatment records and the opinion evidence, and noted observations from the hearing. [The claimant's] boilerplate argument is therefore inapplicable in this case." (citation omitted)); *see also Ladda*, 749 F. App'x at 172 ("[T]he ALJ in this case used evidence from the record to explain his finding that [the claimant] was capable of light work. For example, the ALJ noted that [the claimant] claimed that he could walk for only ten to fifteen minutes at a time and could not lift ten pounds, but he explained that the other evidence in the record, such as medical records and opinion evidence, did not fully substantiate these claims. The ALJ also explained the relative weight he assigned to the statements made by [the claimant], [the claimant's] treating

physician, and the state agency medical consultants. The ALJ provided a sufficiently thorough discussion for us to agree that his conclusion that [the claimant] was limited to light work was supported by substantial evidence."). Plaintiff's contention in this regard thus is unavailing.

Plaintiff nonetheless maintains that the ALJ should have accounted for time off task and absenteeism. Pl.'s Mem. Supp. Mot. Summ. J. 14, ECF No. 12-1. The VE testified that no work would be available to an individual off task more than 25% of the time from the inability to pay attention and to concentrate. R. at 74. Absences of five days per month would also preclude work. R. at 74. Plaintiff's treating source, Abayomi Jaji, M.D., opined in January 2017 that he would be off task more than 25% of an eight-hour workday and absent from work at least five days per month. R. at 565. The ALJ, however, gave little weight to the doctor's opinions because "[t]hese extreme limitations lack balance and consistency in view of records documenting limited, routine, and conservative mental health treatment, limited abnormalities on clinical examination, and further in view of [Plaintiff's] ability to perform a broad range of normal daily activities." R. at 33. Substantial evidence supports the ALJ's reasons for giving little weight to the doctor's opinions, which Plaintiff does not dispute. *See Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (noting that claimant's daily activities can support ALJ's discounting of treating physician's opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (considering inconsistency between treating physician's opinion and claimant's daily activities to be specific and legitimate reason to discount treating physician's opinion); *Chavis v. Apfel*, No. 98-1145, 1998 WL 827322, at *3 (4th Cir. Dec. 1, 1998) (per curiam) (unpublished table decision) ("Here, the ALJ properly discounted the opinions of several of [the claimant's] treating physicians that she was disabled because the opinions were conclusory and inconsistent with various activities that [the claimant] has engaged in over the

years."); *Craig*, 76 F.3d at 590 (determining that treating physician's medical notes and claimant's reported daily living activities were persuasive evidence that contradicted physician's conclusory opinion based on claimant's subjective reports of pain).

Last, Plaintiff appears to contend that remand is warranted under *Mascio* despite the ALJ's finding that Plaintiff's limitations in his ability to concentrate, persist, or maintain pace were only mild during the relevant period (R. at 30). Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 12-1. However, "*Mascio* dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC." *Brooks v. Berryhill*, No. 3:15-CV-00440-RJC, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017). Even if *Mascio* applied to mild limitations in concentration, persistence, or pace, when "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Shinaberry v. Saul*, __ F.3d __, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020) (quoting *Winschel*, 631 F.3d at 1180). Here, the ALJ gave great weight to the opinion of the state agency consultant, C.W. Kang, M.D. (R. at 32-33), who opined in February 2015 that Plaintiff's difficulties in maintaining concentration, persistence, or pace were mild (R. at 132, 147) and that he could understand, retain, and carry out simple instructions and could cooperate effectively with the public and co-workers in completing simple tasks and transactions (R. at 135, 150). The ALJ gave great weight to Dr. Kang's opinion that Plaintiff could perform a range of simple work because it was "balanced, objective, and consistent with the evidence of record as a whole," including evidence of Plaintiff's daily living activities and routine and conservative treatment of his mental impairments (R. at 32-33). The ALJ also gave great weight to the

opinion of Mikhael Taller, M.D., the consultative examiner who opined in September 2014 that, despite Plaintiff's self-reporting of unstable concentration and memory, he was "able to understand and to follow simple instructions independently" (R. at 400). The ALJ gave great weight to Dr. Taller's opinion because it was supported by evidence demonstrating, among other things, that Plaintiff was partially cooperative and that it appeared that Plaintiff was trying to convince the doctor that he was responding to internal stimuli (R. at 33, 395). *See id.* (finding that ALJ sufficiently explained why mental limitation to simple, routine, and repetitive tasks accounted for claimant's borderline intellectual disability and her moderate limitations in her concentration, persistence, or pace). Thus, Plaintiff also argues to no avail that the Court should remand this matter under *Mascio* because the ALJ limited his RFC to simple, unskilled work despite finding that his limitations in his ability to concentrate, persist, or maintain pace were only mild.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: March 13, 2020                                    /s/
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge